1
2
3
4
5
6
7        **UNITED STATES DISTRICT COURT**
8        **CENTRAL DISTRICT OF CALIFORNIA**
9        **WESTERN DIVISION**
10
11   SHARON GRAYSON,                    )      No. CV 06-1903-PLA
                                        )
12              Plaintiff,              )
                                        )      **MEMORANDUM OPINION AND ORDER**
13         v.                           )
                                        )
14   MICHAEL J. ASTRUE,[1]              )
     COMMISSIONER OF SOCIAL            )
15   SECURITY ADMINISTRATION,          )
                                        )
16              Defendant.              )
     _____)
17
18                              **I.**
19                         **PROCEEDINGS**
20         Plaintiff filed this action on March 29, 2006, seeking review of the Commissioner's denial
21   of her application for Disability Insurance Benefits.  The parties filed Consents to proceed before
22   the undersigned Magistrate Judge on April 11, 2006, and May 25, 2006.  Pursuant to the Court's
23   Order, the parties filed a Joint Stipulation on November 22, 2006, that addresses their positions
24   concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under
25   submission without oral argument.
26   /
27   _____
28       [1]   Michael J. Astrue became the Commissioner of Social Security on February 1, 2007.

## II.

## BACKGROUND

Plaintiff was born on July 31,1950.  [Administrative Record ("AR") at 54.]  She completed four years of college and vocational training in nursing and has past work experience as, among other things, a registered nurse, an assistant office manager, and an office worker. [AR at 61, 66.]

On June 7, 2002, plaintiff filed her application for Disability Insurance Benefits, alleging that she has been unable to work since March 18, 2002, due to multilevel cervical spondylosis with cervical radiculopathy, arthritis, left knee and back impairments, and inflammation of her eyes. [AR at 54-56, 70.]  After a denial of her application, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 41, 45-49.]  The hearing was held on May 4, 2005, at which time plaintiff appeared with counsel and testified on her own behalf.  [AR at 371-400.]  A vocational expert also testified.  [AR at 390-99.]  On June 24, 2005, the ALJ determined that plaintiff was not disabled. [AR at 17-25.]  When the Appeals Council denied review on February 1, 2006, the ALJ's decision became the final decision of the Commissioner. [AR at 5-9.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

must defer to the decision of the Commissioner.  <u>Moncada</u>, 60 F.3d at 523; <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995); <u>Drouin</u>, 966 F.2d at 1258.

**IV.**

**<u>THE EVALUATION OF DISABILITY</u>**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); <u>Drouin</u>, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995, <u>as</u> <u>amended</u> April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  <u>Id.</u>  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  <u>Id.</u> If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  <u>Id.</u> If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  <u>Id.</u>  The claimant has the burden of proving that she is unable to perform past relevant work.  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets this burden, a <u>prima facie</u>

3

case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.   The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.  [AR at 18.] At step two, the ALJ concluded that plaintiff's back, neck and knee impairments constituted a "severe" impairment.  [Id.] At step three, the ALJ determined that plaintiff's impairment or combination of impairments did not meet or equal any impairment in the Listing.  [Id.]  The ALJ further opined that plaintiff retained the residual functional capacity[2] to perform the lifting and sitting requirements of light work that does not require prolonged standing or walking or repetitive kneeling, squatting, jumping, running, or climbing.[3]  [Id.]  At step four, the ALJ concluded -- based on vocational expert testimony -- that plaintiff was capable of performing her past relevant jobs as she performed them.  [AR at 24.] Accordingly, the ALJ determined that plaintiff was not disabled. [AR at 24-25.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred in: (1) determining plaintiff's residual functional capacity; (2) finding that plaintiff could return to her past relevant work; and (3) evaluating plaintiff's

---

[2]   Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]   Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b) and 416.967(b).

4

1  subjective impairments and complaints of pain. Joint Stipulation ("Joint Stip.") at 2.  As set forth

2  below, the Court agrees with plaintiff, in part, and remands the matter to defendant.

3

4  **A.    RESIDUAL FUNCTIONAL CAPACITY**

5        Plaintiff contends that the ALJ failed to properly evaluate her residual functional capacity

6  because she failed to give reasons for excluding limitations assessed by one of plaintiff's treating

7  physicians.  This alleged failure to either include or properly reject the treating physician's

8  assessment, plaintiff argues, constitutes error.

9        The ALJ primarily adopted the residual functional capacity assessment of plaintiff's treating

10  orthopedist, Dr. David B. Pechman, and partially adopted the assessment of another treating

11  orthopedist, Dr. Steven Nagelberg.  [AR at 24.]  In her decision, the ALJ found that plaintiff

12  retained the residual functional capacity to lift or carry 20 pounds occasionally and 10 pounds

13  frequently and limited plaintiff to standing or walking for six hours in an eight-hour day.  [AR at 18,

14  24.]  The ALJ further precluded plaintiff from prolonged standing or walking and from repetitive

15  kneeling, squatting, jumping, running, or climbing.  [Id.]  Plaintiff objects to the ALJ's exclusion of

16  the portions of Dr. Nagelberg's residual functional capacity assessment that (1) included

17  restrictions against prolonged sitting, (2) indicated that plaintiff may "possibly" need unscheduled

18  breaks, and (3) indicated that plaintiff may be absent from work about three times per month due

19  to her impairments.  [AR at 354-56.]

20        Generally, the opinions of treating physicians are given greater weight than those of other

21  physicians, because treating physicians are employed to cure and therefore have a greater

22  opportunity to know and observe the claimant.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir.

23  1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812

24  F.2d 1226, 1230 (9th Cir. 1987)).  Although the treating physician's opinion is entitled to great

25  deference, it is not necessarily conclusive as to the question of disability.  Magallanes, 881 F.2d

26  at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989)).  Where the treating

27  physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons.

28  Lester, 81 F.3d at 830.  Where the treating physician's opinion is contradicted, the ALJ may reject

1  it in favor of another physician if the ALJ makes findings setting forth specific, legitimate reasons

2  for doing so that are based on substantial evidence in the record.  Ramirez v. Shalala, 8 F.3d

3  1449, 1453-54 (9th Cir. 1993). Specific and legitimate reasons can be set forth by a "detailed and

4  thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation

5  thereof, and making findings."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

6        Here, plaintiff contends that the ALJ failed to properly reject the residual functional capacity

7  assessment of Dr. Nagelberg, namely his assessment that plaintiff must avoid prolonged sitting

8  and that plaintiff may require unscheduled breaks and may experience three absences from work

9  per month.  The Court agrees with plaintiff.  The ALJ gave four reasons for giving limited weight

10  to Dr. Nagelberg's responses to the Physical Residual Functional Capacity Questionnaire

11  ("Questionnaire") completed on March 4, 2005.  [AR at 354-56.]  First, the ALJ noted that Dr.

12  Nagelberg's Questionnaire did not set forth additional objective data.  [AR at 23.]  Second, the ALJ

13  observed that Dr. Nagelberg completed the Questionnaire shortly before the hearing, which she

14  interpreted as indicative of the physician's desire to assist plaintiff in obtaining benefits.  [Id.]

15  Third, the ALJ noted that while Dr. Nagelberg's opinion mirrored the scope and severity of the

16  symptoms that plaintiff testified to, the physician's assessment contradicted the statements to and

17  by Dr. Nagelberg himself,[4] and Dr. Pechman.  [Id.]  Finally, the ALJ rejected Dr. Nagelberg's

18  assessment with respect to plaintiff's need for unscheduled breaks and absences from work

19  because such restrictions were not in the physician's earlier reports.  [AR at 24.]  Instead, the ALJ

20  primarily relied on the assessment of Dr. Pechman, but partially adopted Dr. Nagelberg's opinion

21  with respect to the limitations he assessed as to plaintiff's left knee.  [AR at 20.]  As discussed

22  below, the Court finds that the ALJ provided insufficient reasons to exclude Dr. Nagelberg's

23  limitations.

24

25

26        [4]   In the decision, the ALJ refers to contradictions in statements made to and by Dr.

27  Nuremberg.  [AR at 23.]  Since the records do not contain any information about a Dr. Nuremberg and the ALJ writes about Dr. Nagelberg's allegedly inconsistent statements in the following

28  sentence, the Court presumes that the ALJ is referring to Dr. Nagelberg.

1.   Objective Data

The ALJ rejected Dr. Nagelberg's responses to the Questionnaire because no additional objective data was set forth.  [AR at 23.]  The Court rejects this finding, as the Questionnaire is not the totality of information provided by Dr. Nagelberg.  The ALJ is not required to accept a medical opinion that is conclusory and inadequately supported by medical findings, especially when the opinion is in the form of a check-off report.  Magallanes, 881 F.2d at 751; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (the ALJ need not accept a treating physician's opinion which is "conclusory and unsubstantiated by relevant medical documentation"); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings). See also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because it consisted of check-off reports that did not contain any explanation of the bases of their conclusions); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports).  In this case, however, Dr. Nagelberg conducted thorough examinations and/or considered reports regarding plaintiff's condition on July 11, 2003, August 19, 2004, November 18, 2004, and January 19, 2005. [AR at, respectively, 189-94, 343-46, 339-41, 334-37.]   Three of these reports contained Dr. Nagelberg's clinical examination of plaintiff and a discussion of plaintiff's impairments and restrictions.  [AR at 189-94, 334-37, 339-41.] The reports dated August 19, 2004, and January 19, 2005, moreover, contained a review of Dr. Pechman's reports.  [AR at 334-37, 343-46.]  Given that Dr. Nagelberg last examined plaintiff and completed a report of his clinical findings on January 19, 2005, less than two months before completing the Questionnaire on March 4, 2005, the ALJ's finding that Dr. Nagelberg's Questionnaire failed to "set forth additional objective data" is not a complete assessment of the evidence.  [AR at 23.]  The objective data may not have been in the Questionnaire itself, but it certainly exists in the record.

2.   Bias

The ALJ rejected Dr. Nagelberg's restrictions outlined in the Questionnaire because the form was completed shortly before the hearing and "appears to have been done for the purposes

7

of establishing this social Security [sic] claim." [AR at 23.] "[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." Reddick, 157 F.3d at 726; see also Lester, 81 F.3d at 832 (purpose for which medical report is obtained is not legitimate basis for rejecting it, as report procured by claimant is entitled to no less weight than report procured by Commissioner: "The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits") (quotation omitted); cf. Saelee v. Chater, 94 F.3d 520, 522-23 (9th Cir. 1996)(rejecting treating physician's opinion that was created at request of claimant because doctor's opinion letter varied from his treatment notes and "was worded ambiguously in an apparent attempt to assist [the claimant] in obtaining social security benefits").  Although an ALJ may consider the purpose for which an opinion was solicited, he cannot rely solely upon the purpose behind the opinion to reject the opinion.  Reddick, 157 F.3d at 726 ("Evidence of the circumstances under which the report was obtained and its consistency with other records, reports, or findings could, however, form a legitimate basis for evaluating the reliability of the report.").

Here, the ALJ erred in citing the alleged purpose for which Dr. Nagelberg rendered his opinion.  Unlike the situation in Saelee, nothing in the record suggests that Dr. Nagelberg ambiguously worded his opinion to assist plaintiff.  No evidence exists in the record to support the ALJ's contention that Dr. Nagelberg completed the physical capacities assessment form in an attempt to assist plaintiff in obtaining benefits, nor does the ALJ cite anything other than the timing of the Questionnaire.  The Court is not persuaded by the ALJ's assertion that Dr. Nagelberg's completion of the Questionnaire shortly before the hearing date indicates bias.  Even the ALJ concedes that this proffered reason by itself is insufficient to reject the physician's opinion. [AR at 23.]  As such, in the absence of other evidence to undermine the credibility of his report,  the ALJ's reference to Dr. Nagelberg's purported motivation in completing his assessment of plaintiff's functional limitations does not constitute a valid ground for giving limited weight to his opinion.

3.    Contradicted by the Medical Record

Next, the ALJ noted that while Dr. Nagelberg's opinion mirrored the scope and severity of the symptoms that plaintiff testified to, the physician's assessment contradicted the statements

1   made to and by both Dr. Pechman and Dr. Nagelberg.  [AR at 23.]  The ALJ also noted that the

2   Questionnaire was inconsistent with Dr. Nagelberg's own report to the extent that he found major

3   restrictions on lifting and carrying and suggested limitations greater than for prolonged sitting,

4   standing, and walking.  [AR at 23-24.]

5          Dr. Pechman made less restrictive medical findings than Dr. Nagelberg.   After his

6   examination of plaintiff on March 23, 2004, Dr. Pechman found the work restrictions of Dr.

7   Nagelberg to be "somewhat excessive" and "not consistent with the facts of this case."  [AR at

8   129.]  Dr. Pechman noted that plaintiff's spondylolisthesis required no epidurals and no invasive

9   treatments.  [Id.]  Dr. Pechman also noted that he saw no disc protrusions in plaintiff's cervical

10  spine and no findings that would necessitate neck surgery in terms of disc protrusion or herniation.

11  [Id.]  Dr. Pechman also noted minimal objective findings in plaintiff's cervical spine that would

12  require "a lot of restrictions in cervical motions."  [Id.]  Overall, Dr. Pechman made assessments

13  that plaintiff avoid heavy work activities, very forceful cervical motions, and kneeling activities.  [AR

14  at 130-31.]

15         The ALJ, however, does not specify which statements made to and by Dr. Pechman

16  contradicted Dr. Nagelberg's Questionnaire.  The ALJ may not reject Dr. Nagelberg's assessment

17  without providing specific and legitimate reasons supported by substantial evidence in the record.

18  Lester, 81 F.3d at 830.  Specific and legitimate reasons can be set forth by a "detailed and

19  thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation

20  thereof, and making findings."  Reddick, 157 F.3d at 725.  Here, the ALJ failed to set forth the

21  allegedly inconsistent statements with the requisite detail.   A review of the medical records

22  indicates that Dr. Nagelberg assessed greater restrictions than Dr. Pechman due to the different

23  weight assigned to the same evidence in the record.  On August 19, 2004, and January 19, 2005,

24  Dr. Nagelberg reviewed Dr. Pechman's reports and noted that his own restrictions were greater

25  because he placed greater significance on the MRI and CT findings than Dr. Pechman.  [AR at

26  334-37, 343-46.]  Both physicians examined plaintiff and the records, but interpreted the evidence

27  differently.   If the ALJ chooses to give more weight to Dr. Pechman's assessment than to Dr.

28  Nagelberg's assessment, she must give specific and legitimate reasons supported by substantial

evidence for doing so.  Ramirez, 8 F.3d at 1453-54.  Merely citing a difference in opinion is not sufficient grounds for rejecting a treating physician's opinion.  Reddick, 157 F.3d at 725 n.7 (conclusory statements rejecting a treating physician's opinion are inadequate).  Overall, the ALJ has failed to state how and which contradictions in statements made to and by Dr. Pechman negatively impact on Dr. Nagelberg's opinion.

The ALJ also alleged that Dr. Nagelberg's assessment in the Questionnaire was inconsistent with the physician's own report to the extent that he found major restrictions on lifting and carrying and suggested limitations greater than for prolonged sitting, standing, and walking. [AR at 23-24.]  The ALJ failed to more specifically interpret these alleged contradictions in the record.  In his July 11, 2003, report, Dr. Nagelberg assessed work restrictions that included preclusions on heavy work and prolonged sitting, standing, and walking. [AR at 192.]  In the Questionnaire, dated March 4, 2005, Dr. Nagelberg opined that plaintiff could lift and carry 10 pounds occasionally, but never more than 20 pounds. [AR at 355.]  Dr. Nagelberg also opined that plaintiff could sit continuously for 30 minutes at a time, stand continuously for five to ten minutes at a time, and walk for approximately one to two blocks. [AR at 355.]  Dr. Nagelberg further opined that plaintiff needed to shift positions at will from sitting, standing, or walking. [Id.] The ALJ apparently concluded that Dr. Nagelberg's restrictions in the Questionnaire contradicted his earlier report and that such contradictions constituted grounds for rejecting the Questionnaire. [AR at 23-24.]

The Court, however, finds that the alleged contradictions cited by the ALJ lack support.  First, Dr. Nagelberg's assessment in the July 11, 2003, report that plaintiff avoid heavy work does not contradict his response in the Questionnaire that plaintiff can lift and carry 10 pounds occasionally, but never more than 20 pounds. [AR at 192, 355.]  In the report, Dr. Nagelberg did not specify the exact amount of weight that plaintiff should not lift or carry, but described the amount using the general term "heavy." [AR at 192.]  In the Questionnaire, he seems to have clarified that amount as 20 pounds. [AR at 355.]  This may not be a contradiction between the assessments, but rather a more precise finding than the original.  Similarly, the Court finds no contradiction in Dr. Nagelberg's assessments with respect to plaintiff's restrictions on sitting,

standing, and walking.  In the report, Dr. Nagelberg precluded plaintiff from prolonged sitting, standing, and walking, but did not indicate a specific amount of time.  [AR at 192.]  In the Questionnaire, Dr. Nagelberg opined that plaintiff could sit continuously for 30 minutes at a time, stand continuously for five to ten minutes at a time, and walk for approximately one to two blocks.  [AR at 354.]  The Court finds that these specific restrictions do not necessarily contradict Dr. Nagelberg's original assessment that plaintiff avoid prolonged sitting, standing, and walking.

Even if the Court found the Questionnaire to be more restrictive than or contradictory to Dr. Nagelberg's earlier report, the Court notes that the Questionnaire was completed on March 4, 2005, 20 months after Dr. Nagelberg's July 9, 2003, report.  On November 14, 2004, between the two assessments at issue, Dr. Nagelberg reported that plaintiff's condition worsened and that she was in a great deal of pain in multiple areas.  [AR at 340.]  As a treating physician since 2003, Dr. Nagelberg is one of "the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 404.1527(d)(2).  As such, it is possible that Dr. Nagelberg's responses to the Questionnaire reflected changes in plaintiff's condition based on a longitudinal picture of plaintiff's condition, and not contradictions between the assessments.  The Court thus finds that the ALJ improperly cited to inconsistencies in Dr. Nagelberg's assessment as a ground for rejecting the Questionnaire.

4.   Failure to Cite in Earlier Reports

Finally, the ALJ rejected Dr. Nagelberg's assessment in the Questionnaire with respect to plaintiff's need for unscheduled breaks and absences from work because such restrictions were not in the physician's earlier reports.  [AR at 24.]  Dr. Nagelberg completed reports regarding plaintiff's condition on July 11, 2003, August 19, 2004, November 17, 2004, and January 19, 2005.  [AR at, respectively, 189-94, 343-46, 339-41, 334-37.]  While Dr. Nagelberg's July 11, 2003, report contained a discussion of plaintiff's work restrictions, the subsequent medical reports did not address plaintiff's residual functional capacity.  [Id.]  Until he completed the Questionnaire on March 4, 2005, Dr. Nagelberg had not made any assessments as to plaintiff's work-related

11

1    limitations in his reports dated August 19, 2004, November 17, 2004, and January 19, 2005.

2    Rather, these three reports contain information from Dr. Nagelberg's examinations of plaintiff and

3    assign apportionment of her injury with respect to her worker's compensation case.  [AR at,

4    respectively, 343-46, 339-41, 334-37.]  Since the purpose of the three reports immediately prior

5    to the Questionnaire did not involve or appear to require any residual functional capacity

6    assessments, the absence of the limitations at issue from Dr. Nagelberg's prior reports is not

7    substantially probative to cite as a reason for rejecting those limitations set forth in the

8    Questionnaire.

9        Overall, the ALJ improperly cited to the lack of objective data, bias, inconsistencies, and

10   failure to assess the limitations in earlier reports as grounds for rejecting Dr. Nagelberg's opinion.

11   While the ALJ gave greater overall weight to the opinion of Dr. Pechman with respect to plaintiff's

12   functional limitations, she gave greater weight to Dr. Nagelberg with respect to his restrictions on

13   plaintiff's left knee.  [AR at 20.]  The ALJ found that Dr. Nagelberg's assessed limitations on

14   plaintiff's left knee were consistent with, but more complete than, Dr. Pechman's limitations.[5]  [Id.]

15   Thus, at the same time that the ALJ found significant deficiencies in Dr. Nagelberg's opinion in

16   most respects, she chose to adopt the physician's opinion in one regard.   The ALJ is not entitled

17   to pick and choose from a medical opinion, using only those parts that are favorable to a finding

18   of nondisability.  See Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004), citing Switzer

19   v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984).  Given this "hybrid" decision, the Court finds that

20   the ALJ must give legally sufficient reasons to reject the bulk of Dr. Nagelberg's opinion, especially

21

22

23

---

24       [5]   In his May 17, 2001, April 7, 2003, and March 23, 2004, reports, Dr. Pechman examined
     plaintiff's left knee and most recently diagnosed her with chondromalacia.  [AR at 121-32, 146-47,
25   169-70.]  With respect to functional limitations, Dr. Pechman opined that plaintiff's discomfort in
     her knee, which appeared to be intermittent and slight, became more than slight but less than
26   moderate with kneeling activities. [AR at 131.] On July 9, 2003, Dr. Nagelberg examined plaintiff's
     knee and took various measurements.   Dr. Nagelberg diagnosed plaintiff with patellofemoral
27   arthrosis, and noted that plaintiff's constant slight pain became slight to moderate with heavy lifting
28   and moderate with kneeling, squatting, climbing, jumping, and running. [AR at 191.]

1   since she also found it partially credible.  [AR at 24.]  Such reasons were not provided.  According,

2   remand is warranted.[6]

3   **B.    PLAINTIFF'S CREDIBILITY**

4           Plaintiff next argues that the ALJ failed to properly evaluate plaintiff's complaints of pain and

5   did not properly apply the pain standard. In her decision, the ALJ listed the following reasons for

6   finding that the frequency, intensity, and effect of plaintiff's symptoms on her work efforts are not

7   disabling in nature:

8           (1)    plaintiff was declared permanent and stationary without restrictions in mid-2001

9                  based on injuries that are the foundation of the instant claim without subsequent

10                 significant trauma or changes;

11          (2)    plaintiff made admissions that her pain level was not as great as she presently

12                 asserts;

13          (3)    plaintiff exhibited a lack of full effort on range of motion testing, and inconsistencies

14                 in such testing render her claims suspect;

15          (4)    plaintiff's treatment is not consistent with the severity of her complaints;

16          (5)    plaintiff's brief participation in vocational rehabilitation was terminated for reasons

17                 not relating to the instant claim;

18          (6)    the ALJ's observations of plaintiff during the hearing render her complaints suspect;

19          (7)    plaintiff's worker's compensation case had not settled and plaintiff appears to be

20                 attempting to exaggerate her symptoms for potential secondary gain;

21          (8)    medical reports suggest that plaintiff can do work that is less physically demanding

22                 than her nursing job and that she looked for full time work in the nursing industry

23                 prior to one year from her onset date; and

24

25

26          [6]    Plaintiff also contends that the ALJ erred in determining that she was able to return to her
    past relevant work.  As the ALJ's evaluation of plaintiff's residual functional capacity affects
27  whether she can perform her past relevant work, and the Court remanded on the residual
    functional capacity issue, the Court will not address the past relevant work issue at this time.
28  Rather, it should be re-evaluated on remand.

1     (9)    plaintiff testified of fatigue and other side effects from her medications but failed to

2            report such complaints to her physicians.

3   [AR at 18-19.]

4         Whenever an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to

5   deny benefits, as it was here, the ALJ must make explicit credibility findings.  Rashad v. Sullivan,

6   903 F.2d 1229, 1231 (9th Cir. 1990); see Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990)

7   (implicit finding that claimant was not credible is insufficient); see also Lester, 81 F.3d at 834 (the

8   ALJ must provide clear and convincing reasons for discrediting a plaintiff's testimony as to severity

9   of symptoms when there is medical evidence of an underlying impairment).  Indicia of unreliability

10  upon which an ALJ may rely to reject a plaintiff's subjective complaints include: (a) activities

11  inconsistent with a finding of a severe impairment; (b) discrepancies in plaintiff's statements;

12  (c) exaggerated complaints; and (d) a conservative treatment regimen.  See Fair v. Bowen, 885

13  F.2d 597, 603-04 (9th Cir. 1989) ("if, despite his claims of pain, a claimant is able to perform

14  household chores and other activities that involve many of the same physical tasks as a particular

15  type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not

16  prevent the claimant from working."); Brawner v. Secretary of Health and Human Services, 839

17  F.2d 432, 433 (9th Cir. 1988); Copeland v. Bowen, 861 F.2d 536, 541 (9th Cir. 1988); Johnson v.

18  Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (that plaintiff received only conservative treatment for

19  back injury is clear and convincing reason for disregarding testimony that plaintiff is disabled).  If

20  properly supported, the ALJ's credibility determinations are entitled to "great deference."  Green

21  v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

22        Plaintiff testified that she constantly experiences burning pain and numbness in her lower

23  back, which radiates down both legs to her feet, and that her knee frequently buckles when she

24  walks.  [AR at 378, 385.]  Plaintiff also testified to constant groin pain, neck pain, and pain

25  radiating into her arms and hands and into her back and chest.  [AR at 381.]  She also stated that

26  her hands feel "tingly," her fingers are numb, and she suffers pain in both wrists.  [Id.]  Plaintiff

27  further testified that she has difficulty sleeping because "[l]ying down is a nightmare," and that she

28  suffers from severe eye pain.  [AR at 383, 384.]  As a result of the pain, plaintiff testified that she

14

always has to keep moving. [AR at 385.]  Plaintiff further testified that she can stand or sit for approximately five to ten minutes at a time and lift under ten pounds. [AR at 385-86.] Finally, plaintiff testified that her pain medications make her fatigued, she experiences difficulty with concentrating, and she needs to lie down frequently throughout the day. [AR at 386-87.]

In this case, the ALJ employed ordinary techniques of credibility determination, supported by substantial evidence in the record, to conclude that plaintiff's subjective complaints were not entirely credible.  See Fair, 885 F.2d at 604 n.5.  The ALJ cited clear and convincing reasons for concluding that plaintiff's allegations of pain and other symptoms were not disabling.  [AR at 18.] First, the ALJ rejected plaintiff's credibility, in part, based on her lack of full effort on range of motion testing.  [AR at 18.]  Indeed, in his March 23, 2004, report, Dr. Pechman opined that plaintiff gave "suboptimal effort" on the range of motion testing of her cervical spine. [AR at 130.] The Ninth Circuit has held that "efforts to impede accurate testing of [a claimant's] limitations supports [sic] the ALJ's determinations as to [a claimant's] lack of credibility." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2003).  Therefore, the ALJ properly cited plaintiff's perceived lack of effort on the medical testing as a ground for rejecting her credibility.

The ALJ also rejected plaintiff's credibility based on her attempts to find full time work in the nursing industry, notwithstanding her complaints of severe pain. [AR at 18.] Specifically, the ALJ noted that plaintiff had filed an employment application after the alleged onset date, but no job was offered and she did not pursue other opportunities when she learned that the jobs were per diem, not full time. [AR at 21, 150.]  Plaintiff's applications for work strongly suggest that her pain may not be so severe as to preclude her from work, and that her testimony may not be credible in that regard. Additionally, the ALJ rejected plaintiff's testimony of fatigue resulting from her medications based on the fact that she did not report such side effects to any physician prior to the hearing. [AR at 19.]  Indeed, a review of plaintiff's detailed medical records indicates that she never reported any side effects from her medications to any physicians, and plaintiff in the Joint Stipulation points to no such references.  The first mention that the pain medications cause fatigue and that she must lie down occurred during plaintiff's testimony at the hearing.  [AR at 386.] Overall, plaintiff's search for employment notwithstanding complaints of disabling pain coupled

15

with her lack of reporting the complaints to which she testified raise doubt as to her credibility. Internal conflicts in a claimant's statements or testimony support a finding that the claimant lacks credibility.  See Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997) (in weighing claimant's credibility, ALJ may consider "inconsistencies either in [plaintiff's] testimony or between his testimony and his conduct"); see also Fair, 885 F.2d at 604 n.5 (ALJ can reject pain testimony based on contradictions in plaintiff's testimony).  As such, the ALJ cited proper grounds for rejecting plaintiff's credibility.

Resolving conflicts in the testimony and determining questions of credibility are functions solely of the Commissioner.  See Morgan, 169 F.3d at 599.  The ALJ's reasons for rejecting plaintiff's allegations, supported by the record, must be upheld. Accordingly, remand is not warranted on this issue.

### VI.

### REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to further assess Dr. Nagelberg's opinion as it relates to plaintiff's residual functional capacity and her ability to perform past relevant work.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.


DATED: July 6, 2007                                   _____/s/_____
                                                      PAUL L. ABRAMS
                                                      UNITED STATES MAGISTRATE JUDGE